ANTONIO A. AIELLO *vs.* NATIONAL-BEN FRANKLIN FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

MARCH 30, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J.  This is an action of assumpsit on an insurance policy issued by the defendant insuring the plaintiff against loss of certain musical orchestrations or arrangements.  The case was tried to a jury in the superior court and resulted in a verdict for the plaintiff in the sum of $3,500.  Defendant's motion for a new trial was heard and

granted. The case is in this court on bills of exceptions by both plaintiff and defendant. Since the only exception briefed and argued by the plaintiff is to the decision of the trial justice granting defendant's motion for a new trial, all other exceptions in his bill of exceptions are deemed to be waived. Defendant concedes that if the decision of the trial justice is sustained its bill of exceptions, which relates to alleged errors in rulings on evidence and in the charge, may be dismissed without consideration.

In view of our conclusion we shall refrain from a detailed statement of the evidence. In outline the testimony was to the effect that about 1946 the plaintiff, who had been unemployed since 1945, and his brother Walter L. Aiello, a musician, decided to organize an orchestra and to go into business as "Wally Aiello." They agreed that plaintiff would supply all necessary funds for the venture and would act as its business manager, while Walter was to be the orchestra leader, the profits to be divided between them. In furtherance of such venture plaintiff testified that he bought 45 orchestra "arrangements" in September 1947, 15 in July 1948, and 50 more in September of that year, a total of 110 arrangements at $40 each. Neither the plaintiff nor the seller of the arrangements produced any receipts or other records of these various transactions.

The "orchestra" mentioned in this case was not an integrated unit of continuously employed musicians. Whenever the plaintiff booked an engagement Walter would secure the services of the required number of musicians, or "pick-ups" as they were called in testimony, who would play together without rehearsal for that occasion only. In three years the orchestra had at most ten or twelve engagements, the profit therefrom in each instance ordinarily amounting to about $50 or $60 which the brothers divided between them.

On August 16, 1948 plaintiff secured a policy of insurance with defendant for one year in the amount of $2,850 covering one clarinet, one saxophone and "Musical arrangements the limit of liability on any one arrangement not to exceed

50.00    2300.00." By rider, dated October 19, 1948, the total amount of insurance was increased to $4,300, the arrangements being then insured for $4,000. Notice of cancellation of the policy was sent to plaintiff by registered mail on February 25, 1949 but the letter for some undisclosed reason was not received by him.

On July 25, 1949, about three weeks before the policy expired, Wally Aiello's orchestra was engaged to play from 8 to 10 p.m. at a block dance in the city of Cranston. In going to the dance the brothers used two automobiles, the one driven by Walter containing all the arrangements belonging to plaintiff. On arriving at their destination the automobiles were parked near a lighted and frequented street. When the dance was over the brothers returned the arrangements to the same automobile and after carefully locking it Walter, the driver thereof, kept possession of the keys.

After the automobile was locked as above stated, the brothers, having accepted an invitation for refreshments, went to a nearby club and remained there for about one-half hour. On returning to the automobile containing the arrangements Walter discovered that one of its doors was not only unlocked but open and that all of plaintiff's arrangements had disappeared. He then called to plaintiff, who at that time was near the second automobile, saying: "Hey * * * they've done a job on us, the car is open." There were no marks on the car indicating how it had been opened. The police were not notified of the happening until shortly after 12 o'clock noon of the following day, the plaintiff explaining the delay as follows: "Well, I didn't know what to do because I never had anything stolen from me before." Notice of the loss was given to the defendant on the afternoon of that same day.

The only question raised by plaintiff's bill of exceptions as argued is whether the trial justice erred in granting defendant's motion for a new trial. Following *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292, this court has repeatedly

held that the decision of a trial justice on such a motion on the ground that the verdict is against the weight of the evidence will not be disturbed unless it appears that his conclusion was clearly wrong. Where a trial justice has passed his independent judgment on the weight of the evidence, which necessarily includes the credibility of the witnesses, and has not misconceived or overlooked material evidence, his decision on conflicting evidence will be regarded by us as of great persuasive force in appellate proceedings. *Surmeian* v. *Simons*, 42 R. I. 334, 338. Both of these rules have been so well settled by numerous decisions of this court that they require no further citation of authority.

We have carefully examined the decision of the trial justice and find nothing therein which would warrant us in holding that it was clearly wrong. Certain inaccuracies in his review of the evidence which plaintiff has called to our attention are of such a minor character as not to affect the merits of the case. In our judgment the trial justice did not misconceive or overlook any material evidence in arriving at his decision. There is sufficient evidence to reasonably support different conclusions and therefore the decision depends materially if not entirely on the credibility of plaintiff's witnesses. The trial justice saw and heard them as they testified, an advantage which we do not have. From the record before us we cannot say that he was clearly wrong in his decision. In the circumstances it becomes unnecessary, as hereinbefore indicated, to consider the exceptions urged by defendant.

The plaintiff's exception to the granting of defendant's motion for a new trial is overruled, the defendant's bill of exceptions is dismissed without consideration, and the case is remitted to the superior court for further proceedings.

*Robert N. Greene,* for plaintiff.

*Boss & Conlan, John T. Keenan,* for defendant.